**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Cole Stemkowski Goldman, | No. CV-25-01420-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Board of Regents, *et al.*, | |
| Defendants. | |

At issue is Defendants Arizona Board of Regents (ABOR), Arizona Department of Administration (ADOA), Hyochol Brian Ahn, Gail D. Burd, Dr. Betty Parisek, Chrissy Lieberman, Dr. Ronald W. Marx, Peggy Ann Jenkins, John Arnold, Traci Vezzosi, Theresa Ruzovich, and Dr. Michael Dake's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 34, MTD), to which Plaintiff Robert Cole Stemkowski Goldman filed a Response (Doc. 43, Resp.) and Defendants filed a Reply (Doc. 46, Reply).[1] The Court finds this matter appropriate for resolution without oral argument. LRCiv 7.2(f).

## I.     BACKGROUND

In the First Amended Complaint (Doc. 28, FAC), Plaintiff alleges the following facts. Plaintiff is a disabled individual, diagnosed with dyslexia, dysgraphia, ADHD, and autism spectrum disorder. (FAC ¶¶ 24, 310.) Additionally, Plaintiff has bladder issues due to a previous surgery, and this condition requires accommodations for restroom breaks. (FAC ¶ 24.) In 2019, Plaintiff enrolled at the University of Arizona and "proactively

---

[1] Plaintiff also named these individual Defendants' spouses as Defendants to reach their marital property.

established accommodations through the Disability Resource Center (DRC) to ensure academic success." (FAC ¶ 28.) In 2022, Plaintiff expressed interest in the College of Nursing (CON), and a DRC counselor assisted with the confirmation and setup of Plaintiff's accommodations that were finalized with CON. (FAC ¶¶ 29–31.)

The accommodations provided to Plaintiff included notetaking support and lecture recording, 2.0 to 2.25 times the normal test time, text to speech tools, an environment with minimal distraction for testing, extra scratch paper, a calculator, and consistent testing sites. (FAC ¶¶ 51–53.) Plaintiff alleges CON did not fully comply with the accommodation plan. (FAC ¶¶ 54–108.) For example, at times he was given only one piece of scratch paper (FAC ¶ 66); it took faculty time to locate a calculator for him (FAC ¶ 66); a professor requested a change of testing location (FAC ¶ 71); he was sent conflicting times to take his test, denied a review of his test results following the exam, and threatened with a failing grade (FAC ¶¶ 73–76, 80–84); he experienced technical difficulties that required assistance from IT (FAC ¶ 88); during an exam in which a professor was provided to read the test aloud to him, CON did not provide a single reader, but instead rotated readers throughout the exam (FAC ¶ 96); a testing room had large windows and people passing by created distractions (FAC ¶ 97); after he failed an exam due to shortened exam time, he was permitted to retake it but the second exam was in "a different and more complicated format" than the original exam (FAC ¶ 130).

Plaintiff was removed from the program for failing an exam, and although CON later reinstated him, he was not able to matriculate with his peers. (FAC ¶¶ 111–20.) After the alleged failures to accommodate, Plaintiff filed a complaint with the Department of Education's Office for Civil Rights (OCR) on November 30, 2023. (FAC ¶ 156.) During his subsequent clinical rotations in a hospital setting, Plaintiff did not know certain information, claiming it was because he was not provided with sufficient accommodations. (FAC ¶¶ 165–73.) Following poor outcomes in his clinical evaluations, Plaintiff was labeled a safety concern by CON. (FAC ¶ 187.) In October 2024, CON faculty became aware of an academic integrity concern involving Plaintiff's submission of a clinical

1  evaluation document that had been altered. (FAC ¶ 235.) Plaintiff received a seven-day
2  suspension for the academic integrity violation, which included a written warning and
3  required attendance at a mandatory Academic Integrity Workshop. (FAC ¶¶ 244, 281.) In
4  December 2024, Plaintiff successfully completed the workshop and was ultimately
5  permitted to graduate from CON. (FAC ¶ 303.)

On April 28, 2025, Plaintiff filed this lawsuit (Doc. 1), and the FAC—the operative pleading—contains 15 claims against Defendants: (1) violations of the Americans with Disabilities Act ("ADA"), Title II, 42 U.S.C. §§ 12131-34; (2) violations of Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; (3) unlawful retaliation in violation of the ADA, 42 U.S.C. § 12203, and the RA; (4) hostile educational environment in violation of ADA Title II and Section 504 of the RA; (5) a claim under 42 U.S.C. § 1983 for denial of procedural due process under the Fourteenth Amendment; (6) a claim under § 1983 for violation of substantive due process under the Fourteenth Amendment; (7) a claim under § 1983 for violation of the equal protection clause of the Fourteenth Amendment; (8) a claim under § 1983 for First Amendment retaliation; (9) a claim under § 1983 for violation of right to petition for redress of grievances under the First Amendment; (10) a Fourteenth Amendment "stigma-plus" claim under § 1983; (11) breach of contract; (12) breach of the implied covenant of good faith and fair dealing; (13) negligent misrepresentation; (14) intentional infliction of emotional distress; and (15) defamation. (FAC ¶¶ 307–418.)

Defendants—Hyochol Brian Ahn, Gail Burd, Dr. Betty Parisek, Chrissy Lieberman, Dr. Ronald W. Marx, Peggy Ann Jenkins, John Arnold, Traci Vezzosi, Theresa Ruzovich, and Dr. Michael Dake (collectively, "Individual Defendants"), as well as ABOR and ADOA—now move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v.*

*Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. ANALYSIS

To begin with, while the FAC contains specific allegations of individual Defendants' actions, the FAC is unclear as to which claims Plaintiff raises against which Defendants. Additionally, the FAC does not state whether Plaintiff is suing the Individual Defendants in their personal or official capacity. The Court agrees with Defendants that this pleading defect is violative of the Federal Rule of Civil Procedure 8. Defendants have nonetheless provided additional arguments as to why the Court should dismiss the FAC as

1  if Plaintiff alleges all claims against all Defendants. The Court turns to these arguments
2  now.

### A. Jural Entity Status of ADOA

In Arizona, a plaintiff may sue a government entity only if the state legislature has granted that entity the power to sue or be sued. *Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). Additionally, the powers of any agency are defined by the statutes creating it. *Lazarescu v. Ariz. State Univ.*, 230 F.R.D. 596, 601 (D. Ariz. 2005). The statutes creating ADOA, A.R.S. §§ 41-701 *et seq.*, do not provide the agency with the power to sue or be sued, and Plaintiff has identified no authority to the contrary. Without explicit statutory authority, ADOA is not a jural entity and cannot be sued. Therefore, the Court will dismiss all claims against ADOA.

### B. Failure to File a Notice of Claim

Arizona law requires a plaintiff to file a notice of claim with a public entity before suing it for damages under state law. A.R.S. § 12–821.01(A). The notice of claim must set forth "facts sufficient to permit the public entity . . . to understand the basis on which liability is claimed" and "a specific amount for which the claim can be settled and the facts supporting that amount." *Id.* It must be made within 180 days of when the cause of action accrues. *Id.* Claims that do not strictly comply with the statutory requirements are barred. *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 492, 496 (Ariz. 2007); *see* A.R.S. § 12–821.01(A).

Plaintiff does not allege in the FAC or argue in his Response that he complied with the notice of claim statute, either before filing this lawsuit or later, but instead suggests that continuing damages "restart accrual" and the "statute tolls during dispute resolution process." (Resp. at 14–15.) Plaintiff cites no law in support of these assertions, and the notice of claim statute is clear: "Any claim that is not filed within one hundred and eighty days after the cause of action accrues is barred and no action may be maintained thereon." A.R.S. § 12-821.01(A). Therefore, because Plaintiff failed to follow the notice of claim

statutory requirement, the Court will dismiss Plaintiff's state law claims for damages—claims 11 through 15—against all Defendants.

### C. ADA and RA Claims against Individual Defendants

Title II of the ADA applies to public entities and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Further, § 12131 defines public entity to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." Although it is unclear if Plaintiff is asserting these claims against the Individual Defendants, in any event the individuals do not meet the definition of a public entity. Additionally, neither the ADA nor the RA provide a basis for § 1983 claims against state officials in their personal capacities. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Therefore, the Court will dismiss claims 1, 2, 3, and 4 against the Individual Defendants.

### D. § 1983 Claims

Section 1983 grants every person a right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, § 1983 is "not itself a source of substantive rights." *Sampson v. Cnty. of L.A.*, 974 F.3d 1012, 1018 (9th Cir. 2020). To state a § 1983 claim, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States," committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1. Claims against ABOR

Plaintiff names ABOR as Defendant in this case. ABOR, a public corporate body governing Arizona's public universities, is authorized to sue and be sued in its own name. A.R.S. § 15-1625(B)(3). But, within the meaning of § 1983, states and state agencies are not considered "persons" who can be sued for damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Plaintiff seeks only damages in this case. (FAC ¶ 76.)

- 6 -

Therefore, to the extent that claims 5 through 10, the § 1983 claims, are asserted against ABOR, the Court dismisses them.

### 2. Claims against Individual Defendants

In the FAC, Plaintiff has failed to specify which Defendant, through their individual actions, has violated the Constitution. In each of the alleged § 1983 claims, detail is lacking to identify which individual is being named, and whether it is in the individual's official or personal capacity. Even if the Court assumes the § 1983 claims are sufficiently specific, the Court finds these claims lack merit.

Only individual state officials or employees, sued in their personal capacity, qualify as "persons" within the meaning of § 1983. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Courts treat official-capacity claims for money damages as claims against the State and barred by the Eleventh Amendment. *Will*, 491 U.S. at 70–71; *Spears v. Ariz. Bd. of Regents*, 372 F. Supp. 3d 893, 923 (D. Ariz. 2019). Therefore, to the extent any of the § 1983 claims are asserted against the Individual Defendants in their official capacity, claims 5 through 10 fail.

#### a. Personal Capacity of Individual Defendants

For a person to be liable in his personal capacity under a § 1983 claim, "there must be a showing of personal participation in the alleged rights deprivation[.]" *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Additionally, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

The FAC appears to assert all § 1983 claims against all Defendants. Not only did Plaintiff fail to specifically name Defendants in each claim, but he also failed to allege facts specific enough to put Defendants on notice as to which claims are against them and on what basis.[2] To the extent it is appropriate to clarify the claims and identify new allegations

---

[2] There are 10 Individual Defendants and Plaintiff raises six § 1983 claims, apparently against them all. But the FAC fails to connect the Individual Defendants' actions with any of the claims. As but six of the 60 examples, Plaintiff only alleges that Dr. Michael Dake, the Senior Vice President for Health Sciences, was apparently "uninformed" of the alleged civil rights violations against Plaintiff, implying that Dr. Dake should have been involved. (FAC ¶¶ 288, 290.) Those facts do not give rise to any of

- 7 -

in a brief, Plaintiff's Response fails to clarify the § 1983 claims; he simply cites allegations already contained in the FAC and conclusory states that somehow the "specifics link Defendants to procedural-due-process, equal-protection, and/or First Amendment violations." (Resp. at 11–12.) But Plaintiff does not explain how the FAC's allegations illustrate that the Individual Defendants, through their individual actions, violated the Constitution and deprived Plaintiff of his civil rights. And even if the Court considers the claims as adequately pled, they fail because the Individual Defendants are entitled to qualified immunity.

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson*, 974 F.3d at 1018. University officials are among the state actors to whom qualified immunity may apply. *See Hong v. Grant*, 403 F. App'x 236, 237 (9th Cir. 2010). A qualified immunity analysis in a § 1983 action involves two steps: (1) whether the official's conduct violated a constitutional right; and (2) if so, whether the constitutional right was "clearly established" at the time of the alleged violation, such that a reasonable official would have known his conduct was unlawful under the circumstances. *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009). "For a right to be considered 'clearly established,' it is generally important that the precedential case law be factually similar to the case at issue." *Denby v. City of Casa Grande*, 668 F. Supp. 3d 855, 870 (D. Ariz. 2023). To determine whether a clearly established right exists, the focus is "on whether the officer had fair notice that her conduct was unlawful." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

As stated *supra*, Plaintiff sets forth factual allegations in the first portion of the FAC but does not show how each Defendant's conduct violated a constitutional right. Indeed, none of the specific allegations are tied to a constitutional right or mentioned again in the claims section of the FAC. As a result, Plaintiff fails to sufficiently allege facts to meet the

---

Plaintiff's six § 1983 claims against Dr. Dake, and indeed Plaintiff provides neither argument and legal authority to the contrary in his Response nor identifies facts he could allege plausibly giving rise to claims against Dr. Dake.

first prong of a § 1983 qualified immunity analysis. The FAC is also insufficient in identifying a clearly established constitutional right such that any Defendant would have known their conduct was unlawful. More specifically, as Defendants point out, the FAC does not state a specific constitutional right related to his "desired accommodations, his preferred academic pathway, his grades, his academic records," or ultimately his nursing degree. (MTD at 14.) As Defendants further point out, according to Plaintiff's own non-conclusory allegations, the conduct of Defendants was the mere exercise of their discretion as university professors and administrators (MTD at 14 (citing *Hong*, 403 F. App'x at 237)), and Plaintiff does not allege facts making plausible Defendants' knowing violation of Plaintiff's clearly established constitutional rights, let alone cite caselaw supporting that proposition in his Response. (MTD at 11–14; Reply at 10.) Therefore, Plaintiff also fails to allege sufficient facts to meet the second prong of the § 1983 qualified immunity analysis.

Plaintiff asserts in his Response that "qualified-immunity dismissals are generally disfavored because the analysis turns on fact-laden questions—what each official knew, when they knew it, and whether their response was reasonable." (Resp. at 13–14.) In support of this proposition, Plaintiff cites to several cases that not only do not support the proposition stated, but one case that does not appear to exist.[3] (Resp. at 13–14.) In fact, the Supreme Court has stated, "'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation'" (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)), because "qualified immunity is 'an immunity from suit rather than a mere defense to liability'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Throughout the Ninth Circuit, the qualified-immunity defense has repeatedly been resolved at the "motion-to-dismiss stage if the court can determine, based on the complaint itself, that qualified immunity applies." *Evans v. Hawes*, 718 F. Supp. 3d 1351, 1372 (D. Nev. 2024). Here, Plaintiff fails to refute

---

[3] The Court addresses Plaintiff's briefing issues more fully, *infra*.

- 9 -

Defendants' contentions that the Individual Defendants are entitled to qualified immunity, and the Court will dismiss claims 5 through 10.

### E.  Remaining Claims against ABOR

The Court is now left to examine Plaintiff's remaining claims against ABOR, namely, for discrimination under Title II of the ADA (claim 1) and the RA (claim 2), unlawful retaliation under Title II of the ADA and the RA (claim 3), and a hostile education environment under Title II of the ADA (claim 4). Although Defendants ask the Court to dismiss the FAC in its entirety, they make no specific argument regarding the inadequacy of claims 1 through 4 as raised against ABOR.

#### 1.  ADA Title II and RA Claims

The RA and Title II of the ADA require that institutions make reasonable accommodations to their "policies, practices, or procedures" for people with disabilities. *See* 28 C.F.R. § 35.130(b)(7); *see also* 34 C.F.R. § 104.44. To establish a *prima facie* case of a discriminatory denial of accommodations under either the RA or ADA, the plaintiff must show: (1) he is disabled under the Act; (2) he is otherwise qualified, with or without reasonable accommodation, *i.e.*, he can "meet the essential eligibility requirements"; (3) he was "excluded from participation in" or "denied the benefits of the services, programs or activities of" the entity solely because of his disability; (4) the program in question "receives federal financial assistance (for the [RA] claim), or is a public entity (for the ADA claim). *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 (9th Cir. 1999) (citing 42 U.S.C. § 12132 & 29 U.S.C. § 794).

Plaintiff claims that he is disabled under the ADA because of his dyslexia, dysgraphia, ADHD, and autism spectrum disorder. (FAC ¶ 310.) Additionally, with reasonable accommodations, Plaintiff alleges he meets the essential eligibility requirements for participation in the CON. (FAC ¶ 310.) Plaintiff further alleges he required reasonable accommodations, and these were approved by the University's Disability Resource Center, but the University failed to ensure the accommodations were properly provided and discriminated against him by requiring him to meet a higher passing

1  threshold than his peers and excluding him from the program, albeit temporarily, through
2  academic dismissal. (FAC ¶¶ 311–12.) Lastly, Plaintiff alleges the University is a public
3  entity and receives federal financial assistance. (FAC ¶ 317.) The Court finds Plaintiff has
4  alleged sufficient facts for each element of his claims against ABOR of discrimination
5  under Title II of the ADA and the RA (claims 1 and 2) to survive dismissal.

### 2. Unlawful Retaliation Claim

Under the ADA and RA, a *prima facie* case of retaliation requires the plaintiff to show by a preponderance of the evidence that (1) he engaged in a protected activity; (2) he suffered an adverse action; and (3) the adverse action occurred because of the protected activity. *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003); *see also* 42 U.S.C. § 12203, 29 U.S.C. § 794. For the third element of this retaliation test, the standard for the causal link is but-for causation. *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015); *see also Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014). The but-for causation standard requires "that a plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the [defendant]." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The alleged adverse action in a retaliation claim must be "reasonably likely to deter [a person] from engaging in protected activity." *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 & n.5 (9th Cir. 2004).

Plaintiff claims he engaged in a protected activity by requesting reasonable accommodations and filing multiple complaints about inadequate implementation of accommodations. (FAC ¶ 325.) Plaintiff alleges ABOR, through the University, acted adversely by demanding additional medical documentation to justify the accommodations, manipulating testing conditions and evaluation metrics, accusing Plaintiff of academic misconduct, and temporarily removing Plaintiff from CON. (FAC ¶ 326.) Plaintiff alleges these adverse actions occurred because Plaintiff made complaints or requested accommodations. "Each protected activity by Plaintiff was followed by escalating negative

treatment." (FAC ¶ 327.) Therefore, Plaintiff has alleged sufficient facts for each prong of unlawful retaliation and claim 3 against ABOR survives dismissal.

### 3. Hostile Education Environment Claim

While Plaintiff also raises a claim of hostile education environment under the ADA and RA, it is unclear whether such a claim is cognizable in this Circuit. "The Ninth Circuit has not held that such a hostile education environment claim is cognizable, [but] it is equally true that the Ninth Circuit has not held that such a claim is not cognizable; rather the Ninth Circuit has, at times, assumed that such a claim exists." *Ortiz v. Mayorkas*, No. 22-CV-557 JLS (SBC), 2023 WL 5183022 at *3 (S.D. Cal. Aug. 11, 2023) (quotations omitted). Some courts have recognized a hostile education environment claim based on an analogous claim for harassment under Title VII, and if properly pled, the claim may be cognizable at the pleading stage. *See Ostrofsky v. Dep't of Rehab.*, No. CIV S-07-0987 MCE EFB PS, 2009 WL 3011578, at *7 (E.D. Cal. Sept. 17, 2009).

A harassment claim under the RA and Title II of the ADA would then require a plaintiff to show that: "(1) he is a qualified individual with a disability under the [ADA and RA]; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his [education] and to create an abusive [education] environment; and (5) defendant knew or should have known of the harassment and failed to take prompt effective remedial action." *Id.* at *8 (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)). While the Court does not decide whether to recognize the claim here, the Court nonetheless applies the elements to determine if Plaintiff's claim can proceed at this stage.

As noted *supra*, Plaintiff claims that he is disabled under the ADA and RA because of his dyslexia, dysgraphia, ADHD, and autism spectrum disorder. (FAC ¶¶ 24, 310.) Plaintiff alleges that he endured ongoing harassment specifically related to his disability and use of accommodations. (FAC ¶ 332.) Specifically, he alleges he was subject to excessive scrutiny during exams, skepticism from professors regarding accommodations,

disruption of testing environments, dismissive responses to questions, and differential treatment and isolation from peers. (FAC ¶ 332.) Plaintiff also alleges that the harassment was so severe it effectively denied him equal access to CON, although he does not identify exactly how he was denied equal access. (FAC ¶ 333.) Plaintiff also claims that ABOR, through the University, acted intentionally or with deliberate indifference as to how the hostile environment would affect Plaintiff's education. (FAC ¶ 334.) Therefore, Plaintiff alleges enough to give rise to a possible hostile education environment claim. Because of the gray area surrounding this claim, the Court finds that the hostile education environment theory of disability brought against ABOR under the ADA and RA survives dismissal at this stage of the litigation without determining if it is a cognizable claim.

### 4. Remaining Damages

Although Plaintiff includes a prayer for punitive damages in the FAC (FAC at 76), punitive damages are not available for Plaintiff's remaining claims—claims 1 through 4 against ABOR—under the ADA and RA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002); *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009). And while Plaintiff also prays for emotional distress damages—albeit couched as damages for his now-dismissed intentional infliction of emotional distress claim (FAC at 76)—the Court notes that emotional distress damages are also not available for Plaintiff's remaining claims against ABOR under the ADA and RA. *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 221–22, 230 (2022).

### IV. DISMISSAL SUMMARY

In sum, the Court dismisses all claims against ADOA and the Individual Defendants and claims 5 through 14 against ABOR, but the Court preserves claims 1 through 4 against ABOR. Plaintiff requests leave to amend to provide more detail for each of the claims that lacked particularity in associating specific Defendants with specific claims. (Resp. at 11.) Defendants argue that amendment would be futile. For the reasons explained below, the Court declines to grant leave to amend any of the dismissed claims.

If defective claims in a complaint can be cured, the plaintiff is entitled to amend the complaint before his claims are dismissed with prejudice. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Here, the Court finds that amendment cannot cure Plaintiff's defective claims. All the state law claims fail as a matter of law because Plaintiff did not send the notice of claim required under Arizona law. All claims are dismissed as a matter of law against ADOA because it is not a jural entity under Arizona law. All ADA and RA claims against the Individual Defendants in their personal capacity fail as a matter of law because the individuals are not public entities. All § 1983 claims are dismissed as a matter of law against ABOR because such claims for damages cannot be brought against a state entity. And all § 1983 claims are dismissed against the Individual Defendants in their personal capacity because, considering Plaintiff's allegations, the Individual Defendants are protected by qualified immunity. The Court finds that amendment cannot cure these defects, and the Court therefore denies Plaintiff's request for leave to amend.

## V.     RULE 11

In their Reply (Doc. 46 at 2 n.1), Defendants point out—and the Court now confirms—that in the Response, counsel for Plaintiff cites what has become known as a hallucinatory case, that is, a case that does not appear to exist, in support of the proffered proposition that "qualified immunity cannot be resolved now [on a Rule 12(b)(6) motion to dismiss]." (*See* Resp. at 13–14 & n.8 (citing "*Morley v. City of San Rafael*, 728 F. App'x 682, 684 (9th Cir. 2018) (reversing premature QI dismissal)").) Plaintiff's citation leads to an entirely different case—an unpublished opinion of the Ninth Circuit reviewing a district court's grant of summary judgment to a debtor in a case brought by an accounts receivable assignee under the Uniform Commercial Code. Moreover, a search on the caselaw databases does not reveal any case with the parties *Morley* and *City of San Rafael*.

Another of the cases Plaintiff cites (Resp. at 13–14 & n.8) in support of the proffered proposition that qualified immunity "cannot be resolved" on a motion to dismiss, *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009), actually stands for the opposite proposition: the Supreme Court states, "'we repeatedly have stressed the importance of resolving immunity

questions at the earliest possible stage in litigation'" (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)), because "qualified immunity is 'an immunity from suit rather than a mere defense to liability'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Elsewhere in the Response (Resp. at 7), Plaintiff provides the quote, "no heightened pleading of legal theories, facts suffice," citing *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), to set forth the motion to dismiss standard. That case does not contain that quote. And while the provided shorthand summary of the decision is not inaccurate, the proposition set forth in that case—that a plaintiff need not specifically allege in the complaint that she is bringing a § 1983 claim to bring one, so long as she raised a claim premised on a constitutional violation against a state actor—does not apply to Plaintiff's claims here, because he brought his constitutional claims as § 1983 claims in the FAC.

Indeed, Plaintiff cites a number of other propositions in the Response that are inapplicable because Defendants did not raise the related argument in the Motion. The Court will take the time to describe just one of these instances: nowhere in the Motion do Defendants raise a sovereign immunity defense. Defendants do raise another argument, that the FAC, although lengthy, does not identify which claims are brought against which of the two entity and 10 individual Defendants or whether the § 1983 claims apply to individual Defendants in their personal or official capacities. Plaintiff responds, "The FAC's length reflects complexity, not a Rule 8 defect." (Resp. at 8.) Plaintiff then argues:

> This structure also respects sovereign-immunity lines: state entities face ADA/§ 504 claims for appropriate relief, while individual-capacity § 1983 claims supply a vehicle for constitutional accountability. [*See*] *United States v. Georgia*, 546 U.S. 151, 158–59 (2006) (Title II validly abrogates immunity at least where conduct independently violates the Fourteenth Amendment); *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004) (Title II congruent/proportional in access-to-courts context). The Court need not resolve Eleventh Amendment nuances at the pleading stage. It is enough that the claims are properly directed to the correct defendants with cognizable theories.

(Resp. at 9.) To the extent the Court can understand what Plaintiff is attempting to argue or the related caselaw citations, this paragraph is neither accurate—Plaintiff's claims are

not "properly directed to the correct defendants with cognizable theories"—nor in response or related to Defendants' Motion—the Court has not been called on to "resolve Eleventh Amendment nuances."

And other arguments in the Response are simply untrue as a matter of fact. Related to his contention that he did not engage in group pleading in the FAC, Plaintiff states the "FAC is organized by claim and defendants [and] contains pinpoint citations to the factual paragraphs." (Resp. at 8.) None of the claims is organized to identify the specific Defendant against whom it is brought or contains pinpoint citations to the factual paragraphs. (*See* FAC ¶¶ 307–418.) Plaintiff's statement is simply false.

Both the FAC and Plaintiff's Response contain unusual language formulations. While not an issue on its own, it is one of the many indicators, together with all the issues identified above, that Plaintiff used generative artificial intelligence (AI) to write the Response; the problem is that he appears to have done so without appropriate, sufficient attorney review.

Federal Rule of Civil Procedure 11(b) provides that, in presenting to the Court a pleading or motion with his signature, an attorney certifies that legal contentions are supported by existing law (or an extension thereof) and factual contentions have evidentiary support (or will likely have such support after further investigation). And Rule 11(c) allows the Court to order an attorney to show cause why certain conduct has not violated Rule 11(b). With the advent of generative AI, courts around the country have dealt with lawyers who have presented briefs citing caselaw that does not exist, and those courts have often sanctioned the lawyers under Rule 11. *E.g. Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 460–66 (S.D.N.Y. 2023) ("An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system."); *see also Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (stating that a rule proscribing the use of AI in court filings should not be necessary, because attorneys are already under the obligation to ensure that submissions to the Court are accurate).

Here, the Court will require counsel for Plaintiff to provide an explanation for the issues with the Response he filed, which Defendants identified (Reply at 2–5) and the Court summarizes above. If counsel has or can locate the case he cited (as noted above) that the Court cannot locate, he shall provide a copy of the case decision to the Court. Along with an explanation, counsel for Plaintiff shall show cause why he should not be sanctioned under Rule 11.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion to Dismiss (Doc. 34). All claims against Defendants ADOA, Hyochol Brian Ahn and Jane Doe Ahn, Gail D. Burd and John Doe Burd, Dr. Betty Parisek and John Doe Parisek, Chrissy Lieberman and John Doe Lieberman, Dr. Ronald W. Marx and Jane Doe Marx, Peggy Ann Jenkins and John Doe Jenkins, John Arnold and Jane Doe Arnold, Traci Vezzosi and John Doe Vezzosi, Theresa Ruzovich and John Doe Ruzovich, and Dr. Michael Dake and Jane Doe Dake, and claims 5 through 15 against Defendant ABOR, are dismissed without leave to amend. Claims 1 through 4 against Defendant ABOR remain pending.

**IT IS FURTHER ORDERED** that Defendant ABOR shall answer the remaining four claims against it in the First Amended Complaint (Doc. 28) within the time set forth in the Federal Rules of Civil Procedure. The Court will set a Rule 16 Scheduling Conference by separate Order.

**IT IS FURTHER ORDERED** that, within 14 days of the date of this Order, counsel for Plaintiff shall provide an explanation for the issues with the Response he filed (Doc. 43), which Defendants identified (Doc. 46 at 2–5) and the Court summarizes in this Order, and any copy he can locate of the apparently hallucinatory case he cited. Along with an explanation, counsel for Plaintiff shall show cause why he should not be sanctioned under Rule 11.

Dated this 28th day of October, 2025.

Honorable John J. Tuchi
United States District Judge